CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 20 2007

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| ROY M. TERRY, et al., | ) | CASE NO. 3:04CV00084 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. HARDESTY, et al., | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |
| Defendants. | ) | |

This action is before the undersigned under authority of 28 U.S.C. § 636(b)(1)(A) (b)(1)(B) and (b)(3) in accordance with an Order entered by the presiding District Judge on May 25, 2007, directing the undersigned: a) to conduct proceedings to determine whether the parties' proposed compromise and settlement agreement is in the best interest of, and fair and equitable to, the creditors of the receivership estate; and b) to submit to the court a report setting forth findings of fact and recommendations. For the reasons set forth below, the undersigned FINDS that the proposed settlement is in the best interest of, and fair and equitable to, the creditors of the receivership and RECOMMENDS that the court ENTER an order GRANTING the parties' May 24, 2007 motion for court approval of their compromise and settlement agreement, APPROVING the settlement and DISMISSING this case from the docket of the court.

**PROCEEDINGS BEFORE THE UNDERSIGNED**

On June 19, 2007, the undersigned conducted proceedings in which the parties, by counsel, made certain proffers, introduced additional evidence,[1] and explained to the undersigned what they believed were the objective bases for their mutual positions that the proposed payment

---

[1] The parties' exhibits are attached to and made part of this Report and Recommendation.

of $30,000.00 by Hardesty in settlement of the case is in the best interest of, and fair and equitable to, the creditors of the receivership. Much of the underlying factual details concerning the involvement of Michael Hardesty ("Hardesty"), Innovative Business Consulting, Inc. ("IBCI") and Hatchlands Finance, Ltd. ("Hatchlands") in the placement into and receipt of funds from the Vavasseur fraud scheme is set forth in the brief supporting the motion seeking settlement approval. Mot. Ct. Approval (May 24, 2007). There is no question in the undersigned's mind that when suit was initiated, the Receiver had a good faith basis to believe that some $2,000,000 in funds should be recoverable in this action. (Pl.'s Ex. 1.) However, irrespective of whether the Receiver could prove its allegations establishing liability on the part of the instant defendants, attempts to follow the money for potential collection purposes through the labyrinthine international corporate, banking and legal maze either set up or utilized by those involved in the Ponzi scheme has proved to be both a frustrating and, as the undersigned has come to learn, a financially futile effort.

Neither of the corporate defendants are solvent, nor are at least one or more of the principal banks into which funds were channeled. As proffered by the Receiver's counsel, any judgment against either or both of the corporate defendants would be but a pyrrhic victory unless the Receiver could prove that the fictitious profits he believes are attributable to Hatchlands equaled or exceeded the $118,000± revealed by discovery, and the defendants' corporate structures could be pierced to render Hardesty personally liable. To say the least, that would be an expensive undertaking.

Then, of course, there is the question of Hardesty's liability, which has been premised mainly on his relationship to Vavasseur and any negative inferences which could be drawn from

the fact that all relevant records of dealing with Vavasseur through Hatchlands were destroyed under a corporate retention policy. The likelihood that such inference could be drawn is diminished by Hatchlands' documents which tend to show the document retention policy under which certain papers were destroyed had been effective long before any involvement in the Vavasseur scheme. (Defs.' Ex.1 and 2). Even with that hurdle aside, there remains a question of whether either or both Hardesty and Hatchlands profited at all from their ventures. The defendants are prepared to present admissible evidence that either or both, in fact, suffered loss. (Defs." Ex. 3). Moreover, choice of laws and the pitfalls of foreign litigation play a role both in establishing liability and securing collection of any judgment because the funds circulated through or were held in foreign banks. Clearly foreign law would be implicated in any effort to pierce Hatchlands' veil to reach Hardesty individually.

    None of these things, however, make the subject of litigation costs any more palatable than the amounts already spent by the Receiver in pursuing this case. The court was informed by defense counsel that, in negotiations with the Receiver's former chief counsel, Mr. Scott, it was revealed that some $60,000 already had been spent. The Receiver's counsel pointed out that considerable effort has been undertaken to obtain foreign discovery in aid of proving what the Receiver believed in good faith were the profits obtained through the Vavasseur scheme, but that those international discovery efforts have not been entirely successful because the targets of such discovery, for the most part, simply have declined voluntary compliance. Thus, the Receiver was faced with the prospect of incurring substantially greater litigation expense on the mere hope for returns greater than are being offered to settle the case. In that vein, counsel for the Receiver represented that he has assessed the "sunk costs," weighed the prospects for greater returns and

3

Case 3:04-cv-00084-NKM-BWC   Document 45   Filed 07/20/07   Page 3 of 7   Pageid#: 230

determined that the benefits of the defendants' current offer far outweighed those the Receiver could hope for should litigation continue.

Subsequent to the settlement hearing, the undersigned and counsel for the parties had further communication by telephone. During the course of those *post*-hearing conversations, Hardesty increased his offer from $30,000.00 to $40,000.00. In an E-mail received by the undersigned on 20, 2007, the Receiver notified the court that he has incurred fees attributable to this litigation in the amount of $54,521.90 but that he would reduce the amount of fees to $40,000.00 and credit the amount Hardesty now is willing to pay in the fee application he is about to file with the court.[2] Thus, the fund or pool of money available for distribution to the creditors will not be impacted at all by the costs of this litigation.

## DISCUSSION, FINDINGS AND RECOMMENDATION

In determining whether to approve the proposed settlement, the court should consider: 1) the probability of success; 2) the potential difficulties in collection; 3) the complexity of the litigation, including the expense thereof; and 4) the interests of the creditors. *In re Frye*, 216 B.R. 166, 177 (Bankr. E.D. Va, 1997). These factors are summarized in this question: How much more good money must be thrown after "bad" in the event the settlement is not approved, and the parties are pressed to pursue further litigation? Put another way: Should the receiver be allowed to end the litigation with the recovery of his voluntarily reduced "sunk costs," rather than being directed by the court to continue litigation knowing the costs will increase exponentially with little prospect of recovery anything which proportionally is equal to or greater than the figure

---

[2]This email is to be marked "Court's Exhibit #1," and it is attached hereto along with the other exhibits offered at the hearing.

now at play in the amended settlement proposal?

In considering the applicable factors, and in answering these questions, it seems to the undersigned that everyone has yielded a little in an effort to effectuate a settlement in this case. The fund will not be diminished on account of the Receiver's good faith but essentially failed efforts to pursue a larger claim against Hardesty, the Receiver's counsel will abandon part of the claim for attorneys' fees and Hardesty is contributing the funds that, at least satisfy the reduced litigation costs so as to end what has all the earmarks of complex and expensive litigation.

The undersigned continually is reminded of how much the Vavasseur Ponzi scheme resembles the creature depicted in the movie "Alien" or, for those who frequent cyber space, an internet "worm." There comes a time when it was difficult, if not impossible, to distinguish the legitimate from the illegitimate. The settlement terms proffered here are entirely reasonable because, despite the Receiver's good faith belief that some $2,000,000 in ill-gotten profits were at play here, he is faced with serious legal and factual obstacles in proving and collecting an amount that would justify the potential expense to be incurred should further litigation and collection efforts proceed. Hardesty and Hatchlands have proffered substantial evidence suggesting their own losses, and to the extent such evidence actually preponderates, the Receiver could get nothing in the end. Even if the Receiver wins on the claims against the corporate entities, collection would involve international parties as well as considerable subsequent litigation over the extent to which Hardesty may be liable personally for the conduct of the corporate defendants.

The undersigned finds that these circumstance are unfortunate, but they are neither foreign nor unusual. Every day, routine cases are compromised on the very bases reflected in the

proceedings before the undersigned. Would it have been better financially for the Receiver never to have tried? Possibly, but some might have seen this as shirking a duty to pursue targets putatively involved in this Ponzi scheme where the initial evidence would a reasonable person in the Receiver's position to believe a collectible judgment would be attainable and obtainable. Is this a rather poor result? Not at all in the undersigned's judgment because both sides have contributed in a way that diligently pursued the claim, albeit unsuccessfully, and actually protects the ultimate creditors against loss occasioned by the Receiver's pursuit.

While this is, in a line from countless Laurel and Hardy movies, "[T]his is a fine mess" in which we find ourselves, it is a better mess than what the future likely holds should the court reject the settlement proposal and force further litigation. Thus, the undersigned FINDS that the settlement is in the best interest of, and is fair and equitable to, the creditors of the receivership, and RECOMMENDS that the court ENTER an order GRANTING the parties' May 24, 2007 motion for court approval of their compromise and settlement agreement, as amended by the *post*-hearing discussions and E-mail, APPROVING the settlement in which Hardesty will pay to the Receiver the sum of $40,000.00 and the Receiver will reduce the attorneys fees relating to this litigation to the amount paid by Hardesty and provide a credit for same in the fee application about to be filed with the court, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Those affected by this Report and Recommendation are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the

period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

    The Clerk of the Court hereby is directed to send a copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

July 20, 2007
Date

7

Case 3:04-cv-00084-NKM-BWC   Document 45   Filed 07/20/07   Page 7 of 7   Pageid#: 234